# In the
# United States Bankruptcy Court
## For the Northern District of Illinois

| | |
|---|---|
| IN RE:<br><br>DARLENE WOODALL,<br><br>DEBTOR. | EASTERN DIVISION<br>HON. JACQUELINE P. COX<br><br>CASE NO. 19-BK-20222<br>CHAPTER 13<br><br>HEARING DATE: SEPTEMBER 9, 2019<br>HEARING TIME: 10:30 A.M. |

## OBJECTION TO PLAN CONFIRMATION

The City of Chicago ("City") objects to confirmation of the Debtor's proposed chapter 13 plan. The plan as proposed does not comply with the requirements of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Code"), and thus cannot be confirmed.

## TREATMENT OF THE CITY'S CLAIM

The City has a secured claim in the amount of $5,826.15. See Claims Register 4-1. Debtor Darlene Woodall has filed a chapter 13 plan [Docket 7] ("Plan") which provides that the City's secured claim for water charges will be paid in minimal payments of $15.00 per month until April of 2021, at which time the payments step up to $230.00 per month. *See* Plan, §§ 3.2, 8.1.

# REQUIREMENTS FOR CONFIRMATION

Section 1325(a)(5) of the Code, 11 U.S.C. § 1325(a)(5), provides three ways for a debtor to deal with secured claims in a plan. Paragraph 1325(a)(5)(A) allows for confirmation if the creditor accepts the plan, but the City does not accept the Debtors' proposed treatment of its claim. The Debtor is not proposing to surrender the collateral securing the City's claims (a house), which would satisfy paragraph 1325(a)(5)(C). So, to confirm a plan, the Debtor must provide the City with the treatment mandated by paragraph 1325(a)(5)(B), which requires that, with respect to each allowed secured claim provided for by the plan,

    (i)    the plan provides that—

        (I)    the holder of such claim retain the lien securing such claim until the earlier of—

            (aa)    the payment of the underlying debt determined under nonbankruptcy law; or

            (bb)    discharge under section 1328; and

        (II)    if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

    (ii)    the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

    (iii)    if—

        (I)    property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts[.]

2

# OBJECTION:
# FAILURE TO PROVIDE REQUIRED TREATMENT
# (EQUAL MONTHLY PAYMENTS)

The Debtor has proposed a "step-up" plan under which a secured creditor receives lower payments for the initial part of the plan term, and then later, after attorney's fees have been fully paid, the payment to the secured creditor "steps up" to a higher amount. This practice violates the requirement of Section 1325(a)(5)(B)(iii)(I) that payments to a secured creditor must be in equal monthly amounts. No interpretation allowing for variable payments can be squared with the statutory language.

## 1. Section 309(c) of BAPCPA
## "Protecting Secured Creditors in Chapter 13 Cases"

### 1.1. Legislative History and Purpose

In 2005 Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (*i.e.*, BAPCPA). *See* Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005). BAPCPA was passed to correct perceived abuses by debtors. *See Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64, 131 S.Ct. 716, 721 (2011). BAPCPA's § 309, entitled "***Protecting Secured Creditors in Chapter 13 Cases***," amended §§ 1325 and 1326 of the Code to correct specific abuses in chapter 13 cases. *See* Pub. L. 109-8, 119 Stat. 23. Prior to these amendments —

> creditors with a security interest have been required to await payment on their secured claims until after payment of administrative expenses which include unpaid attorneys' fees. Further, Chapter 13 plans often provided for payment of the current mortgage, payment of the mortgage arrearages, and payments made pursuant to a lease and lease arrearages prior to payments on secured claims. This often resulted in uncompensated depreciation of collateral during the pendency of a Chapter 13 case. In the worst-case scenario, a creditor could wait as long as twenty-four months before receiving any distributions on an allowed secured claim.

Richard I. Kilpatrick, *Selected Creditor Issues Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 817 (2005).

As chronicled by one court:

> Prior to BAPCPA, it was not uncommon for some Chapter 13 plans to provide for backloaded payments, such as balloon payments. Another form of backloading involved graduated or *step-up payment plans, where the payments started out smaller and increased over time*. Secured creditors, particularly those secured by a vehicle, viewed this as unfair, exposing them to undue risk in light of the constant depreciation of their collateral.
>
> Other plans, filed by debtors whose employment is seasonal, provided for reduced payments or no payments at all during certain months of the year, or called for payments to be made quarterly or semi-annually, rather than monthly, based upon the peculiarities of the debtor's income stream. Secured creditors had similar complaints with those plans.

*In re Sanchez,* 384 B.R. 574, 576 (Bankr. D. Or. 2008) (*citing In re Erwin,* 376 B.R. 897, 901 (Bankr. C.D. Ill. 2007)) (emphasis added). Congress set out to remedy these problems in 2005.

## 1.2.   The Plain Text of Amended § 1325(a)(5)(B)(iii).

BAPCPA § 309 amended Code § 1325 to protect secured creditors by adding § 1325(a)(5)(B)(iii) to fix the problem of back-loaded chapter 13 plans. *In re Sanchez,* 384 B.R. at 576; *In re Hamilton*, 401 B.R. 539, 543 (B.A.P. 1st Cir. 2009) ("The equal payment provision prevents debtors from back loading payments to secured creditors or paying them other than on a monthly basis."). Under that new section, a chapter 13 plan cannot be crammed down, *i.e.*, confirmed over the creditor's objection, unless —

> with respect to each allowed secured claim provided for by the plan … the plan provides that …
>
> the value as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and …
>
> [if] property to be distributed pursuant to this subsection is in the form of periodic payments, **such payments** shall be in equal monthly amounts; and … [if] the holder of the claim is secured by personal property, the amount of **such payments** shall not be less than an

amount sufficient to provide to the holder of such claim adequate protection during the period of the plan …

11 U.S.C. § 1325(a)(5)(B)(iii) (emphasis added).

Under this section, if the plan provides for periodic payments, ***such payments*** (clearly referring to the periodic payments) must be in equal monthly amounts. *See In re Sanchez,* 384 B.R. at 577 ("interpreting the statute's plain meaning and in context, it is clear that the term 'such payments' … applies to the periodic payments…"). There can be no other interpretation.

### 1.3. Section 1325(a)(5)(B)(iii) Provides for One Single Set of Payments to Secured Creditors.

There is no wiggle room in the express language of the statute for any interpretation of § 1325(a)(5)(B)(iii) that would allow the debtor to confirm a plan that provides for more than one single set of monthly payments to the secured creditor, or a set of unequal monthly payments to the secured creditor. There can only be one set of equal monthly payments to the secured creditor.

The only set of payments described in the section is the "periodic payments" and therefore the use of the term "such payments" can only refer back to those "periodic payments." Such payments, under § 1325(a)(5)(B), must provide for one single set of payments to each secured creditor that are in equal monthly amounts and must also satisfy the second requirement of being sufficient to provide adequate protection to some secured creditors.[1] *See In re Williams*, 2018 WL 1747692 at *4 (Bankr. N.D. Ill. April 10, 2018 (Hunt, J.)); *In re Sanchez,* 384 B.R. at 577; *In re Denton,* 370 B.R. 441, 443 (Bankr. S.D. Ga. 2007); *In re Willis,* 460 B.R. 784, 791 (Bankr. D. Kan. 2011); *In re Williams,* 385 B.R. 468, 475 (Bankr. S.D. Ga. 2008); *In re Henning,* 420 B.R. 773, 789 (Bankr. W.D. Tenn. 2009); *In re Wagner,* 342 B.R. 766, 771 (Bankr. E.D. Tenn. 2006); *In re Leath,* 389 B.R. 494, 501 (Bankr. E.D. Tex. 2008); *In re*

---

[1] In cases involving personal property, the payments must also satisfy the second requirement of being sufficient to provide adequate protection. This requirement is not at issue in this case, involving real property, but the analysis of the cited cases regarding equal monthly payments applies. "[N]othing in section 1325(a)(5)(B)(iii)(I) suggests that it applies only to depreciating assets or only to personal property." *In re Miceli,* 587 B.R. 492, 502 (Bankr. N.D. Ill. 2018).

*Espinoza*, 2008 WL 2954282, at *4 (Bankr. D. Utah Aug. 1, 2008); *In re Kirk*, 465 B.R. 300, 305 (Bankr. N.D. Ala. 2012); *In re Romero*, 539 B.R. 557, 560 (Bankr. E.D. Wis. 2015); *In re Miceli*, 587 B.R. 492 (Bankr. N.D. Ill. 2018); *see also,* Kilpatrick, *Selected Creditor Issues Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 817 (2005).

Therefore, a plan that provides for a set of unequal monthly payments is clearly not allowed. Allowing such a plan ignores the plain text of the statute.

### 1.4. Any other Interpretation Requires Nothing Short of Rewriting the Section.

The U.S. Supreme Court has said on many occasions that where the statute's language is plain, as it is here in the use of "such payments" to refer to the "periodic payments," the Court's inquiry begins and ends with that plain language. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). There is no need to do anything other than enforce the text as plainly drafted and read. *Id.*

As set forth above, it could not be argued that a plain reading of § 1325(a)(5)(B)(iii) would leave anyone believing that the statute envisioned more than one set of payments that must be in equal monthly amounts. As the plain text is clear, the Court should go no further than to enforce it as written.

### 1.5. The Single Set of Payments to Secured Creditors Must Start Month One.

"The statute does not provide for equal monthly payments 'during ***part of*** the period of the plan' or 'during ***some of*** the period of the plan.'" *In re Sanchez*, 384 B.R. 574, 578 (Bankr. D. Or. 2008) (emphasis added). Instead, it provides for equal monthly payments during the plan, which means while the plan is proceeding. Therefore, the equal monthly payments cannot be put off until month two, or month 12, or year 5, under the plan. *Id.*; *Kirk*, 465 B.R. at 305; *Willis*, 460 B.R. at 790. They must run from month one under the plan. *Id.*

This, however, does not mean that the plan must provide for equal monthly payments to be stretched from month one to the final month. Instead, the plan must provide that there are equal monthly payments starting month one and running until the secured claim is paid in full. *In re Sanchez*, 384 B.R. at 578. This is

because once the claim is paid in full it no longer exists, and thus can no longer be paid. This is shown by the fact that under § 1325(a)(5)(B)(i) a plan must provide that the holder of a secured claim retains its lien until the underlying debt is paid in full. *See* 11 U.S.C. § 1325(a)(5)(B)(i). After that, the lien and the claim are gone, and there is no more secured claim to make equal monthly payments on.

In the end, the text of the section is plainly written and can be boiled down to one easy to understand sentence: The plan must provide for equal monthly payments on a secured claim starting month one and continuing until the claim is paid in full. It is that simple. There is no need to strain or torture the text to make accommodations that are not there.

## 2. There is No Persuasive Reason to Ignore the Plain Text of § 1325(a)(5)(B)(iii).

Contrary to the plain text and logic behind its application, several courts have made an "elegant accommodation"[2] to allow for attorneys to be paid before secured creditors by using "strained"[3] and "tortured"[4] interpretations of the statute. The leading case holding that § 1325(a)(5)(B)(iii) should not be read literally, but instead allows for unequally payments to secured creditors during the life of the plan to make way for attorneys' fees, is *In re DeSardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006). The *DeSardi* court admittedly did not have much by way of precedent to draw from before making its decision on the new law. It stated that the "practical operation of 11 U.S.C. § 1325(a)(5)(B)(iii)(I) and (II) is a question of first impression for this Court, and also a question with profound implications for chapter 13 plans. The Court has been unable to locate any decisions that directly address this equal

---

[2] *See In re Willis,* 460 B.R. at 791 (Bankr. D. Kan. 2011) (citing Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 448.1, at ¶ 12, SEC. REV. July 12, 2007, www.Ch13online.com, referring to this as an "elegant accommodation," and "not authorized by the language in § 1325(a)(5)(B)(iii)(I)").

[3] *In re Sanchez*, 384 B.R. at 577 (all of these courts subscribe to "different but strained interpretations of the statute.").

[4] *In re Denton*, 370 B.R. at 445 ("courts have attempted to solve the attorney's fee problem by a tortured interpretation of § 1325(a)(5)(B)(iii).").

7

payment issue." *Id.* at 805.

Writing on a blank slate, the *DeSardi* court held that creditors could provide for minimal payments at the beginning of the plan and then provide that those payments are stepped up after the attorney's fees are paid in full. The City is aware that this court has previously followed the *DeSardi* holding. *See In re Marks*, 394 B.R. 198, 202 (Bankr. N.D. Ill. 2008). However, in the intervening years, a substantial body of case law has concluded that the plain text of the Code and context do not support the *DeSardi* approach. *See In re Williams*, 583 B.R. 453, 457 (Bankr. N.D. Ill. 2018) ("This court cannot harmonize the conclusions reached by [*Marks* and other courts following *DeSardi*] with the statutory provisions."); *see also In re Shelton*, 592 B.R. 193, 202 (Bankr. N.D. Ill. 2018) (holding that absent acceptance by the affected creditor, a step-up plan "would unquestionably be unconfirmable"); *In re Miceli*, 587 B.R. 492, 496-500 (Bankr. N.D. Ill. 2018) (extensively reviewing and rejecting *DeSardi* and *Erwin* lines of cases). The City asks that this court reconsider its approach in *Marks* and join the courts that have rejected the *DeSardi* view.

### 2.1. The *DeSardi* Opinion and Those that Follow It Are Based on Flawed Reasoning.

The *DeSardi* court's reasoning relied on the premise that § 1325(a)(5)(B)(iii) provided for not one set of payments, but for two different sets of payments to secured creditors — one for adequate protection and another in equal monthly amounts. The court held that as long as the adequate protection payments began month one, the equal monthly payments could begin any time down the line. This is a "strained" and "tortured" interpretation (or wholesale redrafting) because the Code only envisions one set of payments to secured creditors, not two. There is nothing ambiguous about a statute that provides that if distributions are to be "periodic payments, **such payments** shall be in equal monthly amounts; and …the amount of **such payments** shall not be less than an amount sufficient to provide to the holder of such claim adequate protection…" 11 U.S.C. § 1325(a)(5)(B)(iii). How could the term "such payments" refer to anything other than the "periodic

8

payments"? It just couldn't. Therefore, the *DeSardi* court's major premise is fatally flawed.

On that extremely flawed foundation of two different sets of payments, the *DeSardi* court went on to hold that "equal monthly payments" do not need to start in month one, but could be postponed theoretically until the final two months of the plan as long as those final two month payments were equal. *Id.* The *DeSardi* court thought that this was the only logical interpretation because a literal reading would lead to untenable results. *See id.* at 807. The Court, however, worked on the assumption that the only alternative to two sets of payments was that "the equal payment provision of § 1325(a)(5)(B)(iii)(I) requires equal payments beginning from the effective date of the plan (the date of confirmation) and ***continuing for the life of the plan***." *Id.* at 805 (emphasis added). The Court gave the following example:

> Consider the case of a quickly depreciating asset, such as a new truck. Assume that, after notice and hearing, the Court sets a $600.00 initial monthly adequate protection payment. There can be no question but that the lender is entitled to full adequate protection. If the remaining balance owed on the truck is $25,000, and if 60 months of $600.00 payments were made (with an 8% annual interest rate), there would be an overpayment beginning in month fifty. By month sixty the debtor would have overpaid the claim by $6,839.79.

*Id.* Thus, the Court assumed the only literal meaning of the section would be to require the payments to go from month one to the final month in equal monthly amounts. And this could lead to overpayments in the case of a quickly depreciating asset.

The Court, however, failed to recognize that after the secured claim is paid in full, payments would terminate. This is because once the claim is paid there is no longer a secured claim to pay. It no longer exists. There is no longer a secured claim to make equal monthly installment payments on. Therefore, in the above example, the Court is correct that payments would need to be at least $600 per month stating at month one. But beginning in month 50 the secured claim would no longer exist and therefore no more payments would be made or be required under the Code. The Code clearly does not require equally monthly payments to be made on a claim that

is completely satisfied and non-existent.

The *DiSardi* court then appeared to look to § 1326(a)(2) to buttress its holding. Section 1326(a)(2) requires the trustee to make a lump sum distribution of the funds paid by the debtor during the gap period between filing and confirmation within a reasonable time after confirmation. The Court stated "[a] lump sum payment [of gap period funds] would make all subsequent payments unequal to the lump sum payment." *Id* at 806. The problem with this statement is that the section requires that the ***plan*** provide for equal monthly payments. Whether payments from the trustee are actually in equal amounts is not a requirement. Although the plan may provide for equal monthly payments, if the Trustee does not make distributions until the plan is confirmed, there could be a number of equal monthly payments backed up in the trustee's possession. But again, that does not mean the plan does not provide for equal monthly payments, which is all that is required. This, therefore, is completely irrelevant to the requirements of a confirmable plan under § 1325(a).

Finally, above and beyond the clear text, the stated purpose of the amendments is to protect secured creditors by fixing the problem of deferring payments until the end of the plan. It is unreasonable to believe Congress went through the work of prohibiting one single balloon payment on month 60 of a five year plan but would allow that same balloon payment to be split between month 59 and 60 as long as those payments were equal. Allowing such an easy work around would write the equal monthly payments requirement completely out of the Code. This hardly satisfies Congress's intent in protecting secured creditors by requiring equal monthly payments.

### 3. Summary.

The plain text of § 1325(a)(5)(B)(iii) requires, for a plan to be confirmable over the objection of a secured creditor, that the plan provide for equal monthly payments on a secured claim starting month one and continuing until the claim is paid in full. The City is a secured creditor entitled to such equal monthly payments under the plan. The proposed plan here does not provide for equal monthly

payments in violation of § 1325(a)(5)(B)(iii) and therefore confirmation should be denied.

# CONCLUSION

For the foregoing reasons, the proposed plan here does not provide for equal monthly payments in violation of § 1325(a)(5)(B)(iii). Confirmation should therefore be denied.

DATED: AUGUST 16, 2019

RESPECTFULLY SUBMITTED,

**THE CITY OF CHICAGO**

Mark Flessner
Acting Corporation Counsel

By: /s/ Charles A. King
    Assistant Corporation Counsel

David P. Holtkamp (6298815)
Senior Assistant Corporation Counsel
Charles A. King (6216362)
Assistant Corporation Counsel
**CITY OF CHICAGO, DEPARTMENT OF LAW**
Chicago City Hall
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel:   (312) 742-0019
Email: David.Holtkamp2@cityofchicago.org
      Chuck.King@cityofchicago.org

## CERTIFICATE OF SERVICE

      I, Charles A. King, an attorney, hereby certify that on August 16, 2019, I caused a copy of the attached City of Chicago's Objection to Plan Confirmation to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List.

                                           /s/ Charles A. King

## SERVICE LIST

**Registrants**
(Via CM/ECF)

| | |
|---|---|
| Brian P. Deshur | brian@freydinlaw.com |
| David Freydin | david.freydin@freydinlaw.com |
| Dana N. O'Brien | dana.obrien@mccalla.com |
| Tom Vaughn | ecf@tvch13.net |
| Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |